Honorable, the judges of the United States Court of Appeals for the Fourth Circuit. Ms. Metcalf. Good morning. May it please the court, my name is Hannah Rogers-Metcalf and I have the privilege to appear before the court today on behalf of the appellant Precias Freeman. Precias Freeman was denied her Sixth Amendment right to effective assistance of counsel at sentencing. Freeman's counsel's ignorance of the law, rules, procedure, and the facts resulted in errors so egregious that her counsel was not functioning as the counsel guaranteed by the Sixth Amendment. And as a result of this woefully ineffective representation, Freeman's sentence was significantly longer than it should have been and substantively unreasonable. Ms. Metcalf, the panel held that he was ineffective. He provided ineffective assistance of counsel. We did that on direct appeal. There is some opposition from members of the court about that process. Could you give us your thoughts about can we do that? Should we do that in this case? Certainly, Judge Floyd. This is an uncommon case. It is rare that the court considers ineffective assistance on direct appeal. But it is not completely unheard of. In fact, the Supreme Court in the Master Row case in 2003, Justice Kennedy wrote to the court and he said specifically, we do not hold that ineffective assistance of counsel claims must be reserved for collateral review. There may be cases in which trial counsel's ineffectiveness is so apparent from the record that appellate counsel will consider it advisable to raise the issue on direct appeal. There may be instances, too, when obvious deficiencies in representation will be addressed by an appellate court sua sponte, which is what happened in this case. It is a prudential rule that this court follows. And this court has never said that it cannot be considered on direct appeal. It's a prudential rule. Let me ask you, you know, there are some cases that are obvious. I think we had one a while back where a conflict of interest was well established and the attorney simply could not represent the defendant. That appears conclusively in the trial. And we can rule on that. This case turns on what the lawyer knew, what his strategic decision was, what he they were thought that maybe their objections wouldn't yield anything beneficial and trying to see fatal with a court of some kind. We have none of that evidence. And under a 2255, we would get that evidence. And as you know, the word conclusive is the standard and it's very hard without that fee-provided ineffective assistance. Disney, you're correct as to the standard and you're correct that in Glover in August, this court found that a conflict of interest was apparent on the record. This year as well, this court in the cert event decision found conclusively on the record where counsel had which didn't bar it. I think we and the Supreme Court much favor the relationship between attorney and client be examined on 2255. We have the very unseemly problem of requiring an attorney to abandon his client in the very case in which he's representing the so my question really comes that in the circumstances of this case where we clearly are missing evidence, I would love to hear what the attorney has to say for himself and I'd love to hear what the attorney told the client and what the client understood. And we have none of that evidence. And to say that to eliminate the possibility of strategy without any evidence one way or the other, it's hard to say it's conclusive. This is the type of that would benefit from the development of a record. And it's not that the defendant will lose this opportunity. It's just that it will be transferred to a different procedural context where this can be better examined. Whereas on the rare cases where we can find representation conclusive, it's a clear black and white fact. And my example of conflict of interest is one example. I happen to be on a case maybe 10 or 15 years ago, 20 years ago, where that was the example we focused on. And we said there's nothing more to if a person has a real conflict of interest, we can address it during the trial. But when you're talking about decisions, whether the how to proceed, discussions between attorney and client, sure this attorney manifested a lot of problems. There's no question you've got a good record on that. But it troubles me that we don't have the important evidence that would eliminate any strategic issue in this case. And 2255 wouldn't deny this client anything, but it would give us a fuller record. I think that's the question that Judge Floyd is really raising, but it's my number one question with respect to this case, because I think we have to be able to conclude these facts conclusively. And I think in the context of what we have, that's a hard standard. It's not only hard, it's almost impossible to make. I think in this case, we do have the facts that you need, and we do have the conclusive evidence, and we don't need the testimony. In the regular course, normal cases, you're correct that we do need that testimony from counsel. But here, we have the testimony from counsel, because he states on the record three separate times that he doesn't understand the law. You can't get any clearer. We don't need to know what he told his client, because he told the court. He says these aren't going to change anything in essence, what the charges are. None of these. They might not. They might not. He may have made an assessment. I mean, what you say could be right, and it might even be more likely than not that he's all messed up. But the three objections he's making is drug weight, and if you really take relevant conduct, the drug weights are going back 10 years or whatever it is. She got off very easy on drug weight. Obstruction of justice when she fled after the trial and remained away as a fugitive, and what was the third one? The acceptance of responsibility. Acceptance of responsibility, yeah. Now, the question is, if he says to her, I've examined these things, and I've concluded we're not going to win, and I'd rather not get the judge pushed back against the wall, I'd like to ask for mercy. He may be wrong, but if he said that or he explained that, it would be a different picture, wouldn't it? Well, that's not what he said on the record. He said on the record they don't make a difference. Well, he may not. He may have made an assessment. Yes, Judge Quattlebaum? I think the most troubling thing he says is on JA-108, where he says none of the objections reduce the number that is relevant to the court. And in isolation, yeah, I think that would be, you know, very difficult. But shouldn't we read that in conjunction with what he said on the page before, when he is really talking about his objections, even if they're successful, aren't going to change much? And even with respect to the drug weight, if, for example, you went down to the one prescription per day, you still have the 180 to 210 months. I mean, I'm not prejudging that he, you wouldn't win on collateral review at all, but it seems like you need to look at the testimony as a whole, and there's at least some possibility of reading that the way Judge Niemeyer has described what he was doing. And I mean, do you disagree that that can be read that way at all? I do disagree that it can be read that way. He states it repeatedly. The district court even leans over at one point and says, listen to my question, and gives them an opportunity to explain what's withdrawing these objections, and he doesn't take the suggestion. He says it repeatedly, and he demonstrates throughout the record that he doesn't understand what he's doing. He filed a civil motion afterwards, trying to reassert these objections. He filed a motion for Bridgeport, which his client wasn't eligible, and he states on page 107 of the JA, I think what you're referring to, he says, objections are not going to change, and change in essence what the charges are. Drug court is more pertinent than objections over what might be considered minimal, although these were not minimal objections from Ms. Freeman, even if found to be appropriate or the arguments being valid. He hasn't done his research. He's ignorant as to the law, and he's stating his ignorance on the record. He couldn't get much more clear than this, and from my perspective, from our opinion, Ms. Freeman contends that this falls under this court's precedent and fissure. This was an opinion written by Judge Butzner, whose ombud courtroom is named after, where he points to a situation in the record where counsel said, and it happened to be transcribed, I'm not really prepared. I only had an hour. This is very similar. Do you have the responsibility to establish also the second strickland prong at this point, prejudice? Well, yes, your honor, we have to establish prejudice. You would have to establish incompetent or inadequate representation, number one, and prejudice, number two, conclusively in this context of this trial. Well, prejudice, your honor, as you all know. Well, I'm asking you on the burden. I'm not asking you what you show. You'd have to give me that burden. That's exactly right, isn't it, Ms. McCaff? That's correct, your honor. Well, you need to answer him straight. Yes. Yes, your honor, we do have the burden of establishing both prongs of strickland on direct appeal, and here she is prejudiced. There's significant likelihood that the outcome would have been different had her counsel understood the guidelines. So, counsel, just so I understand what is issue in the prejudice part of that, she would have to convince us that she would have prevailed on her objections, and that even if she did, that the judge would not have sentenced her to the same sentence. Is that right? It's not that she would have absolutely prevailed, but that there's a strong likelihood that she would have prevailed. Fair enough. Why do you say strong likelihood? I thought the standard now is conclusive. I'm sorry, I couldn't hear the last part of your question. I thought the standard for finding ineffective assistance of counsel during the course of a trial, the standard is conclusive. Don't we have to show she would have been prejudiced? She would have to show? Not more likely or not possibly. We have to show that they missed something that the court would clearly have seized on. The court said just to the contrary, I'll address these, and the government had it that but for counsel's unprofessional errors, the results of the proceedings would have been different. Go ahead. I'm trying to recognize the difference between a 2255 where I think you can make your case and you have a lot better standards favoring you than during the course of a trial where all these open questions would have to be resolved, and we don't have evidence on them. We have some evidence, but we don't have a bunch of evidence. Ms. Metcalfe, can I ask you about sort of the burden here, whatever that burden is, and the question is, do we assess each of these potential sentencing enhancement objections separately, and if so, my read of the record suggests that the strongest one of these for your client would have been the drug weight based on the sort of paucity of evidence in the record. A much lesser strength, I think, evidentiary strength with respect to the other two, the obstruction and the acceptance of responsibility in part because of, someone mentioned this, I forget who it was, that your client did flee the jurisdiction, and there's some evidence in the record that she may have engaged in further misconduct during that time that she was away, so I guess the question I have for you is if only one of those, let's say the drug weight evidence is the one that has merit and that reduces the guidelines, as I understand it, this sentence would still remain within that modified guidelines range, so why would we find prejudice on this record if in fact that's what we hold? Your Honor, as I understand her drug weight objection, if she were to prevail on that objection, and I agree with your assessment of these objections, if she were to agree on the drug weight objection, her offense level would be reduced accordingly and could be reduced at least two levels, two offense levels, and while 210 months would be at the top of that range, the bottom of that range would be 168 months, and so that is a significant difference. I mean, that's a matter of, that's a long time for someone to spend behind bars, and so that would be a substantial difference for her, and we could then show that there was a reasonable probability that but for him withdrawing this meritorious objection, she would have had a different sentence, and that would, that suffices and meets the burden of the prejudice prong of the stripling test. And so how do we factor in the additional record indication that the judge in this case appeared to be bound and determined to sentence her to the sentence that he arrived at, notwithstanding whatever mistakes may have been made with respect to the enhancements? Well, Gavin, your honor, is referring to the standard, the harmless error standard under Savion Matute, but that standard states that it's harmless error for procedural sentencing errors made in a guideline calculation if the court, as here, says it would impose the same sentence, but only if the sentence is reasonable under 3553A factors, and we would contend that the sentence wasn't reasonable in light of the error and in light of the other aspects of our brief, where we contend the sentence is unreasonably high when considered against other similarly situated opioid defendants. Go ahead, Judge. I'll be real quick, but if you did that, Ms. Counsel, you'd be arguing, if you prevailed on the drug weight alone, you'd be arguing that a within guidelines range, albeit at the top, is unreasonable. Is that correct? Well, I don't think so, your honor. The judge here said he was sentencing based on the guidelines that were presented to him, and let's be clear, he didn't make a determination of the guidelines because the objections were all withdrawn, so he didn't actually rule on anything. He accepted the guidelines that she conceded. It's not clear, he says he would have sent it there regardless, but it's not clear if the guidelines had been calculated differently if he had ruled on the objections if he would have given her the same guideline sentence. Yes, Judge Harris. So, something you just said triggered a question I have about what the judge said. You said he says he would have ruled the same way regardless, but in this context where, as you point out, there is no challenge to the guidelines calculation, I'm struggling to figure out what regardless means, like regardless of what. Usually, when we get this kind of a, boy, I don't want to sound normative. Usually, when we get this kind of statement, I would have sentenced the same way whether or not I am right about this particular guideline argument that the parties are having in front of me, and I understand there are two different hypothetical guidelines ranges, and whichever of those two ranges I'm looking at, I'm sentencing the same way. I understand that. That is like a statement that has some content. When I look at this statement, this is just, there's nothing in front of me. I'm just here to say literally whatever the guidelines are, I'm going with 260 months. The guidelines could be probation to three months, and I don't care. So, I don't know how to, I'm having trouble just figuring out what meaning I should ascribe to this kind of a blanket. There's nothing in front of me, but whatever the guidelines are, I'm not changing my mind. This seems unusual to me, and I wonder if you could address that. Well, Judge Harris, I would agree with you that it is unusual because the court didn't make a determination. There's not an allegation here of a procedural error, and this court and the Supreme Court have been very clear that these kind of blanket statements can't immunize an error. They can't immunize a sentence, and so it is unusual that the court made that statement because he didn't actually make a determination as to any of these objections. It's not clear why that statement was there, and we would think, then, that it doesn't immunize the sentence. Well, it would seem that that statement, if it did immunize anything, would be the judge's error and not the counsel's error. Here, you've got, as you started out, you're pretty brazen in terms of how this counsel conducted himself at trial, but it is clear, Judge Diaz pointed to the weight, and then there's the obstruction of justice enhancement, for which the guideline notes make it pretty clear. That doesn't apply to a fleeing-type person, someone who is in that type of an instance, so there is something there. I'm not saying it would be conclusively found, but I'm saying it's there. The problem that seems to be emanating, at least in terms of my thought process, is listen to Judge Nemar's questions in light of the other questions here on the conclusiveness, and when we're looking at Strickland prejudice, I don't think it's more likely than not it is really one that deals with a reasonable probability, but our cases seem to at least indicate, talk about, conclusively appear from the record that the defense counsel did not provide effective representation, but it doesn't seem to make any sense to say you must conclusively show reasonable probability of prejudice. I think there's some tension there, at least in terms of how we analyze this from the inception, and if we're looking and going back to the prejudice test, it's really the Strickland prejudice analysis that seems to me that would follow in this case. I see we're out of time. May I answer the question? Yes, you may. Please. Judge, I think you were correct. The Supreme Court said in Hinton v. Alabama, it's a reasonable probability standard, and in 2016, the Supreme Court in Molina v. Martinez says when a defendant is sentenced under an incorrect guideline range, the error itself can and most often will be sufficient to show a reasonable probability of a different outcome absent the error. That satisfies the prejudice prong of the Strickland test, the reasonable probability. And so where that goes is we've talked about the guidelines, but if those are accepted, it could potentially reduce that guideline by 10 years, which at least when you're looking at it from the Strickland perspective, dealing with a reasonable probability, not a conclusiveness, more likely than not on any level of that level. It seems to me that's the way you look at this as to what this counsel did, and to put it in context, the counsel makes this and says, well, we're going to rely on the bridge. Well, everything in the record that looks to me, bridge doesn't apply to this lady. I mean, it just does not apply. He doesn't know that. It is very obvious from this record. I don't know how you make it up that he knows that. It is very obvious he does not have a clue that this lady will not get bridged. He thinks that he's going to be able to say all these factors don't mean anything, because he thinks this is a model case for bridge. It is absolutely not when you look at the record. That's the problem. I heard you mention the word. I don't like the word ignorance on his part, but it seems like there is some level of incompetence here that's evident from this record for a counselor to stand up and say, here are eight factors. It wouldn't make a difference in the world if you did it on it when clearly it would, because there's evidence supporting them, but even then to rely upon the strategy is I'm now going to go to the bridge program and everything in the record shows that this lady who has all of this, the nature of the offense and the nature of her distribution of it would not allow her into the bridge program. I don't know how you get around that kind of determination. It looks pretty rare to me, pretty much on his face. I don't know the experience of this counselor. We didn't get into all that, but it looks pretty patent that this counselor did not have a clue what he was doing. Judge, I would agree. He did not know the requirement of the bridge court. He states it on the record and he actually appends documents to his filing, improper filing, and he's done email showing he didn't know. It would not be more in this case based on the bridge as well as the objections that he satisfies the requirement. This is a good problem here, counselor. It's a long range one that I have and we've talked and really been focusing mainly on the performance of Strickland and even though a lot of lawyers fall on their sword on for one reason or another in order to help their client's was ineffective or whatever, it remains a professional stigma, I would think, to say that someone was ineffective. I worry about doing that without ever giving the accused lawyer even a chance to defend himself or herself. That seems unfair to me and it seems to me a violation of due process that you say we're going to tag you with this opposium and compromise your professional reputation without ever giving somebody a chance to be heard. You know what I mean? I would think the court of law, such as we are, would want to pay a special appreciation to due process in any attorney disciplinary proceeding. We always ask for responses and, you know, the point is you may walk away on collateral attachment. If you do, you'll get a resentment, but there's something basically unfair about attaching this kind of negative mark to a professional's reputation without ever giving them a chance to respond. That's my problem with it. I'm not holding this individual up as a wonderful practitioner and I'm not saying he didn't make a lot of mistakes, but that's to be lost just by providing notice and an opportunity to be heard. That seems to me so basic to what we do. May I respond? Yes, you may. Okay. Your Honor, I understand the concern for counsel's reputation, however, I would like to present the flip of that here. First, the Supreme Court's on direct appeal, but also in this instance, it's important to note that if we were to wait until this were handled on collateral attack, and I think it would be found that the counsel was ineffective, there's a real harm to Ms. Freeman in this instance. If the court decides this on direct appeal, Ms. Freeman will be entitled under the sentencing guidelines to have her sentence run concurrent with her North Carolina sentence that's related to the obstruction of justice enhancement under 5G3.1B, and she would receive credit for the time already served under that provision. However, her time in North Carolina is going to expire in early 2022. So, just simply due to the passage of time, and this is an unintended consequence of this proceeding through direct appeal, if we now wait for her to have this heard on collateral attack because we're concerned about the counsel's reputation and an opportunity to defend himself, she will lose the ability to have these sentences run concurrent, which means in order to protect counsel's reputation because of his error, she's going to have four more years to receive it. I want to join in Judge Wilkerson's statement, because I think his focus is, in terms of the counsel's reputation, has a lot of merit to it. I've tried a lot of cases. I know what it feels like to be in these places, and your reputation's on the line. But, you know, I think at the end of the day, this is about a defendant who has received a sentence, and who, based upon the record before us, it is quite clear that he said some things in that trial that's right on the record that are absolutely wrong. And while his reputation is something we want to be concerned about, it is Ms. Freeman who's sitting in jail right now is what this case is about. He may get a chance to defend his reputation before a state bar if it went that far, and I'm not saying it should. I'm not saying that at all, because I don't know the circumstances. But I'm only saying that in this instance, we are dealing with a Strickland-type issue here, and the question is whether or not this is rare enough. But when a guy, when a counsel stands up and says, you know, it wouldn't make any difference if even she prevailed on these factors, when in fact, patently, it would make a difference, and then he focuses totally on a program for which she almost conclusively, if not conclusively, cannot qualify for, and he puts all his eggs in that I think. But I can say, let me just say this, that I'm not sure it's the rare case, because the same argument, counsel, that you just ably made, and that my friend Judge Wynn made, that can be brought up in every situation, because collateral review always delays the ultimate collateral review. It's always going to increase the time of incarceration, and it's going to work to the detriment. So I'm not sure I see the limiting principle to what you're saying, because if delay is the reason for the prospect of delay, which appears in all collateral proceedings, it's going to be the basis that we resolve these claims to a greater extent on direct appeal. I just think we are ultimately losing something, and I've been on so many instances, sat on so many cases, where something is posed as a rare case, and then down the road, it's going on again and again and again, a case that's not so rare after all. I worry about traveling a troubling road. If I may address that very briefly. Ms. Metcalf? Yes, Judge. Ms. Metcalf, this is a rare situation when we grant the relief that you're seeking here, ineffective counsel on direct appeal, but we have done it, correctly? I'm correct to say that, right? We have done it, Your Honor. That's correct. How many cases have you identified where the Fourth Circuit has granted relief on direct assistance to counsel? The main published opinion is Judge Butsner's decision from 1973 in the Fisher case. There are a number of unpublished opinions, Your Honor. All right. How about published opinions? How many published opinions? There is one published opinion that I can find, and that is the Fisher case. It has also been done by a number of our sister circuits. All right. Here, let me give you one from the Fourth Circuit, United States v. Russell, 221 Fed 3rd, 615, 2000, Fourth Circuit, 2000, that I offered. Does that help you? And, Judge, why don't you agree with me? There's another one for you. Thank you, Judge King. I understand your research skills are far superior to mine, especially when you write opinions. I happen to remember the case. You know, there's another reality to that in terms of the number of unpublished opinions, and maybe it's just my observations, but we as a court tend not to make published cases like that. I mean, because they are so rare, you don't want them to become. I'm just offering that, that maybe they could have been published or not published, but that seems to be a way in which we do things around here, and so when you come up to say that it's unpublished, meaning it really doesn't have any precedential value, it does have some, at least, persuasive weight to it, but that's just the policy of the court. I would just think that taking this step in an in-bank proceeding would vary more than the normal way in the future. It would. All right. Farewell. Mr. Watkins? Good morning, Your Honors. My name's Bill Watkins, and I'm representing the United States in this matter. Your Honors, in the last 10 years, this court has been firm, and it's been consistent in holding that it cannot conduct a meaningful appellate review in sentencing matters without a developed record. Carter, Blue, Slaffy are examples of such precedent. Your Honor, in this case, and consistent with this precedent and the spirit of it, all the government is asking is that this court allow Ms. Freeman, her trial counsel, the government, and the district judge to fully develop this record on this matter of ineffective assistance of counsel. In the district court, we can have affidavits, we can have testimony, cross-examination, written interrogatories, and some of the very good questions that Your Honors have asked will be answered. Mr. Watkins, why do you need that in this case? There's no better example and evidence of what a lawyer means than what she or he says and does. He waived all the objections, then he came back with a civil motion, and if you read the motion very carefully, he didn't even understand the withdrawal of the objections. It seems like he thought he still had preserved them because they were mentioned in the record. I mean, so it's, so how does it, how do you, why don't you say, and when you talk about give someone a chance, it's clear, it's absolutely clear. He just did not understand it. I mean, how do you, I could, how do you, how do you clear that up? You often think the record has multiple inferences in this case. For example, Ms. Medcalf is very quick to cite, as I would be if I were in her shoes, page 108 where Mr. Smith makes a statement that none of those objections reduce the number relevant to this court. However, if we turn back to page 107 and get context for that statement, for example, Mr. Smith says that he's discussed the relevance of the objections with his client, and with regard to the big picture, the objections are not going to change what the charges are, and that he believes that drug court or some arguments made in favor would be more pertinent. Then he goes on to say, we don't think that takes away from the vast number of pills that the government has accused her of dispersing or acquiring. Clearly, Your Honor, when he's talking about the number, he is talking about the vast number of pills. Whether we're dealing with a drug weight of a level 34 or a level 32, his client is in a bad spot because of the vast number of pills. Your Honor, if we turn also to page 117... He says, wait a minute, counsel, she's in a bad spot because he's given up all the objections. If he had pursued it, in this case, he could have argued that she should not have been accounted more than 52,000 in this case, and it would have changed a swing of almost six to seven points. I mean, totally, if you look at just part of that, part of that when you look at the obstruction. For example, obstruction because in this case is... Let me just say this way. You said the big picture was bridge, right? This is why this record shows that that couldn't be a strategy. You've seen the PCR report, haven't you? Right? Yes, sir. Did you see anything in there that counsel even put to support his client's position about mercy? You have to figure out that during this time that she fled, she had a baby. She was homeless. She was addicted. It was almost like they just hired... She had a baby. She went to her family and had a baby. She had permission to go there to go to church in that state. When you load up the PSR with that information about her, nothing about that at all. Nothing about her because in your brief, you keep saying her assertion, her assertion of addiction. He left the record where you could say something like that and didn't even put those things in there. It was clear. It's not even in the... So even if that was his big picture, he didn't even make a case for any sympathy in this case. And he gave up every, every objection. And then we know he did it not knowing the law because he came back with a civil motion to try to restore them and didn't understand what the impact was of removing. He thought it was still before the court. No, that's why the court looked with astonishment. You want to do what, counsel? Are you sure? Wait a minute. Let me ask this again. The only way to believe that this is in it is not to look at the record. How did you get around that? My goodness, how do we prop up lawyers when it's the constitution protects the accused? Your Honor, first of all, you have multiple questions. First, Your Honor, respectfully, Ms. Freeman was in a bad spot, not because of her lawyer, but because of her own judgment. Her own choices. She chose to leave the jurisdiction without permission. She chose to be gone six months after her probation officer, a week after she went to Shelby, told her to return. She chose to engage in new criminal conduct. She chose to smuggle drugs into a local jail after she was apprehended. That's because of Ms. Freeman's conduct that she was in a bad spot, Your Honor. Secondly, as regard to the record in this case, Your Honor, as I said on page 117, the lawyer again points out in the big picture, nothing is going to change out of those objections. The fact that she is an addict and opioids have consumed her life. Again, when he's talking about the number is not going to change, he's clearly talking about the number of pills. He obviously knows that if he were to have been able to win an objection, the guidelines go down. He spent a lot of time calculating the drug weight based on the prescriptions and discovery as shown from his objections and his motion to reconsider. And he calculated a level 32. What's obvious here, Your Honor, from the record, as well as his statements and his motion to reconsider, is that he realized that he did not want a confrontation with the case agents, with the probation officer, where there would be terrible testimony for his client about her continued criminal activity, bad behavior while on bond, when he had no chance of winning very frivolous objections. He made a strategy decision that he would focus on the mitigating and on the positive. And Your Honor, again, respectfully, I disagree that we have to tease that out of the record. I think that lawyer made an excellent presentation that humanized Ms. Freeman, that she had a great addiction in his terms. He goes back to 2000 with her having a fall, talks about her children, talks about how she could be a great force in the community to teach others, goes into her family situation. Your Honor, obviously, the district judge did not buy all those arguments. Again, I understand, but that's not unreasonable to focus on the positive, because Your Honor, he could have, say, won one battle. I disagree that he could have won a battle on the objections, but he could have lost the war when all this horrible testimony comes in about her misconduct and opens her up for an upward variance, possibly from the district judge. So I don't think that we have a record that conclusively shows ineffectiveness in this matter. I expect counsel, I expect you to argue that, but it really, it turns on any kind of reasoning. I mean, I practiced law for 20 years. I did criminal defense work and other. To say that this record represents counsel was effective is, I read your brief, so that's why I didn't really ask you much question. I see you understand that, but you can't justify this. You can't justify that this is any way near effective. The judge didn't do anything but accepted the PSR guideline because he accepted what they put in there. It was nothing. He gave up all of the objections and the guideline for the weight, if it was 52,000, 52,000, it wouldn't even be the top line of the 210. It wouldn't be. So, but I understand and that's your job. I'm not gonna criticize you for doing your job, but to say we have to delay here, this is clearly, and for example, why in the record did you not even put in that she had a child during that time? It's almost like you said, well, she's black and she built, did she know that she had a baby? Your honor, I probably was aware that she was pregnant at the time, but your honor, I've had defendants have children in prison before. That's not uncommon. If you're, well, I'm sure they have, but we're talking about obstruction of justice, but she never missed a meeting at all, at all, and he gave up the objection. She said, look, I tried to reach her. I tried to, so he gave up all of that. She didn't have a chance. If she had not gotten that obstruction of justice, she would have gotten her excessive responsibility. That's a swing of five points. Your honor, respectfully, there was a warrant out for Ms. Freeman, the probation office at the judge's directions instructed her to come back to South Carolina. And it's from her own words in the record, as well as her counsel, she decided she wasn't going to obey that court's order because she didn't want the department of social services involved, which the court had directed regarding her children. And she didn't want child possibly born in prison. Your honor, she just disregarded the court's instruction. And there was a warrant, there was a proceeding, your honor, as we've cited in our case. Warrant is a proceeding when the judge instructs her to come back. Your honor, Ms. Freeman just thumbed her nose at the court. She did not thumb her nose by your own statement. Is thumbing your nose to say I'm concerned about my baby? She's just had a baby. She's in postpartum. And you say that's thumbing your nose? Your honor, she had not had the baby yet. She was pregnant at the time, but I would be thumbing my nose at this court if I decided not to show up today to argue the case because I wanted to do something else when you have ordered me to do so. But if you showed up and showed a medical reason, it's unlikely that you would say you obstructed justice by not being there. That's the difference. She was treated like this didn't matter because he gave up everything. That's why the judge looked at him and said, are you sure? Your honor, she's hit out from law enforcement for six months. Judge Harrison has a question. I'm sorry, it's Judge Rushing. I'm sorry. I'm sorry. I thought I saw a judge. No problem. I'm on the phone, counsel. I wanted to ask about the acceptance of responsibility because I know that's connected in some ways with the obstruction. How does the acceptance of responsibility argument tie into, you mentioned, I believe she was, when she was captured after she was gone for a period, she was involved in other criminal activity. Is it related to that? Or is it related to attempting to smuggle drugs into the jail? Or is it both of those that relate to the acceptance of responsibility? Your honor, in the PSR, which the district judge adopted, so he adopted the findings, it was based primarily on her flight from the district and refusal to come back. But as your honor well knows, this court can affirm on any ground appearing in the record. And I feel very comfortable by saying that no district judge in the district of South Carolina would have given this individual acceptance of responsibility after she was smuggling drugs in a jail, picked up new charges, and fled the jurisdiction after a judge had invited DSS to be involved and instructed the probation officer to have her to return immediately. You're just not going to get acceptance in any court or before any federal district judge I've ever been before in that situation. That may well be true, and respect, certainly, the fact you practiced there. But getting back to the gravamen of Judge Gregory's questions and just rushing to follow up, this is a sad situation. And we can take the procedural way and follow the law strictly and say, oh, this is a terrible woman. She's selling drugs all over the place. And she's not obeying warrants. And you do it, as you say, without realizing why. There's a serious why here. This lady was pregnant. And I see nothing in the record to show on the first time she was pregnant, she falls down and the doctor prescribes to her these very, very harsh narcotics, for which she then, at least what I see, she becomes addicted. Doesn't explain anything else she did. Doesn't mean not an excuse legally. But when you're talking about in terms of she's such a bad, bad person, she's really a sick, sick person from addiction that arose from a legal prescription. Something that is occurring across this country almost epidemic right now. And we as a court and as a nation are taking different views on it. And to say that when she's facing a judge that he wouldn't even think about giving her acceptance of responsibility, I would agree with you if she started out in this kind of a thing on the streets and this is what she was doing. But there is in the record right there, patent evidence, this woman is addicted. And all to, we've said this counselor didn't know any better. He actually, he probably thought what someone who hadn't read in the law would think. And that is someone like this lady is just what the greatest court ought to take up. You ought to take up people who are addicted and came in and took innocence. They got prescriptions and they became sick. That's not the state of the law unfortunately. He did what someone on the street would do and not as a lawyer in this type of a case. So I think when you look at the context of it, we just cannot, it just doesn't feel good to me to say she's done all these things. I agree, legally we are bound to do certain things, but we cannot and I will not approach this case as though this lady is just a hardened, hard-nosed criminal from the day she's born and just been mean spirit and evil. When the inception of this started with a legal prescription that was given to her when she was pregnant the first time and she fell for pain and she became addicted. And I haven't seen yet where that source has been addressed by anybody. And again, it doesn't, I mean, legally it's not gonna keep you from getting convicted if you go and sell it to other people. But that's the basis, that's the genesis of it. And I don't think we can escape that when we view this case, regardless of how we do it. We can be harsh all we want to in terms of saying the rule is a rule and we're gonna do this. But this nation is facing this problem on an epidemic level. And it's not just this woman. It's just that she's doing drugs. There are people who've done this. They've killed people. They've done all kinds of things. They've ruined their families based upon the inception of a legal prescription that caused them to be addicted. We know right now, there's civil cases going on right now punishing people who did that. And somebody is responsible beyond this lady for what she's doing to say, she knew better, she's addicted. I mean, it's like saying an alcoholic knows better than taking a drink, which we try to do in the Virginia case, but this is a problem. And I'm not saying it changes the legal outcome, but to take that hard line view that she's just horrible, that's to me, seems unacceptable in this case. Your Honor, I would not say Ms. Freeman is horrible. I would say she's done horrible things. For example, if you were to accept her statement alone that she was selling 500 pills a week to individuals, it's a terrible thing that she is putting out that number of pills on the market for other people. We are in agreement on that. That's what I wanna make clear. We're not saying she didn't do horrible things under the law,  that we don't accept this in a vacuum. This woman is sick, and she got that way from a legal prescription that probably should have been given to her. She became addicted. And then these horrible things happened. But I'm not gonna argue with you. You and I agree. These are horrible things she did. I agree. Yes, sir. And Your Honor, it was a tremendous number of pills. Again, from a human perspective, is this a very sad story? Absolutely. Is that perhaps something with regard to the drug laws that our policymakers and the national legislature might want to consider? Absolutely. It's probably something that the sentencing court would have wanted to consider more had her counsel at sentencing done his job. Your Honor, I think she did a excellent job of bringing up her addiction and highlighting that to the court. And he talked about the civil suits against Walgreens and other pharmacies, sort of in line with what Judge Wynn has made some excellent points on. Judge Thacker, he raised those. The district judge obviously heard him, but he obviously saw that the other factors outweighed that. And indeed, Your Honor, the guidelines in a departure situation make clear that addiction is not a proper grounds for a departure. It typically means it's more likely that that criminal defendant is going to be a recidivist. And many courts have found that addiction is not a mitigating factor per se, but it's aggravating. So I do understand the great points Judge Wynn made, and I think many of them go more to policy. But however, this district judge, along with what you on this court have been telling district judges to consider individuals, to carefully evaluate the sentencing factors, he did so, Your Honor. Mr. Watkins, I have a question that Judge Diaz here. So there's been a number of references to the strategy of trying to divert the defendant, in this case, to the bridge program, the federal court's drug court program. And it seems pretty clear, maybe you take issue with this, that the defendant was not a likely candidate for the program. And so if we start from that proposition that the defense counsel just was mistaken about the likelihood of success with respect to this being admitted into the diversionary program, don't we then look to see whether or not the strategy of essentially treading lightly with respect to the enhancements was in fact a reasonable strategy? Because if he didn't have the option of the diversionary program, his only realistic option was to try to reduce the guideline sentences to as low a level as reasonably possible. And if that's the case, did he fail miserably in doing that? Your Honor, I don't think there's any evidence in this record of statistics or anything that would tell us the acceptance rate to this bridge program. Whether individuals with such and such drug weight, the odds that they get in and that type thing. What we do have, however, is information that if you're not a violent person, you didn't have a gun, you're certainly not disqualified from that. And as the district judge pointed out, it's in the district judge's discretion. He never ruled that she was procedurally barred because of whatever reason. The government never made that argument. Everyone on this record went into this sentencing proceeding on the proper assumption that this judge could have put her in the bridge program had he decided to. But he held that this would not be appropriate in this case, Your Honor. So, counsel, if we should make an independent determination here looking at the record that was before the court, that it was extremely unlikely that she would make qualifications for the bridge program, then what would we conclude about the rest of the representation that her counsel gave you, which I thought was important as Diaz's question to you. DIAZ Judge Mott, I understand that's a hypothetical. As you know, I disagree that this record shows that she would never have gotten in the bridge program. That doesn't exist. You've made that very clear. But everybody can read the record, right? But as to your point, Your Honor, even if we assume you're correct on that, she would have never gotten in. I think from this record, we can still conclude it sounds strategy, again, not to bring out bad testimony from case agents and the probation officer, again, about poor decisions, bad actions that Ms. Freeman has made, continued criminal conduct, fleeing, trying to smuggle drugs into a jail, ignoring the court's order. And I think it's reasonable to try to limit that. Yes, Judge Harris. Can I ask you a question? And I also am going to ask you to assume a hypothetical, which is that as I read, what I think we all agree is the most troubling sentence where he says, look, none of my objections go to the ultimate number here. And I read that as telling the judge, none of my objections are going to affect the guidelines calculation. Isn't there a difference between a lawyer not raising an objection for some of the reasons you've given and a lawyer, and again, hypothetically, affirmatively and incorrectly assuring the judge, like you don't need to worry about any of this. You may have had questions about the drug weight, but don't worry because it doesn't affect the guidelines calculation. That seems like a different kind of attorney error. Your Honor, if I understand your question, I would agree that if page 117, this lawyer is, we can conclusively say that he believes if he wins an objection, it's not going to affect the guideline calculation. We've established ineffectiveness and your next inquiry is prejudice. Okay. Just a very quick question on prejudice. What would the hearing be for on prejudice? If the record conclusively proves decision performance, why do we need an evidentiary hearing on prejudice? What sort of evidence would be put in? Well, Your Honor, I would think there would have to be factual findings, for example, on the drug weight. Issue with Ms. Freeman, you know, her assertion that that is an error that she could have never reached a level 34. Again, we would have to hear from her. We would have to do new calculations there. Seems like that's all sort of a legal question, whether on the record in front of this judge at this time, there was a reasonable likelihood that the objections would have prevailed. I don't know that you would take additional evidence that wouldn't have been in front of this sentencing judge, right? Like, I don't know. Your Honor. It's not important. No, ma'am, it is important. And let me answer that. For example, Ms. Freeman contended in the record at one time that her statement to DHET investigators about passing sometimes or successfully filling 21 prescriptions a week and on a bad week only doing seven that she contends, well, didn't I say that was just attempts? Well, that's not is what that's not what is in the 302 or MOI, whatever we want to call it. For example, we would have testimony to see if those investigators, if that's what they recollected, if they have a recollection, is that what she said? Cross-examine her on issues like that. Those are the type of issues that the government believes a hearing would help. Yeah, I do. The other part of this appeal is whether we can deal with a sentence as being unreasonably procedural or substantive if it's within the guidelines. This sentence is obviously within the guidelines. Under what circumstance could this court undertake the review of a sentence like in this case is fairly extreme if the rule is a presumption and not a per se rule? Just for example, my research has indicated most often when we deal with substantive reasonableness and there's a determination of sentence within the guidelines was substantively unreasonable. It's in the child pornography area. And as your honors well know, Congress themselves crafted that guideline is in effect and not the sentencing commission. While I'm sure it is indeed possible, perhaps in other circumstances, your honor, I have trouble coming up with a good hypothetical outside that child pornography guideline, especially when that is the guideline where courts have found the sentence is substantively unreasonable. The sentencing commission does a good job. And I think that's the result. So your honors, on to this substantive reasonableness point, Ms. Freeman hinges everything on one sentencing factor and she attaches many nice graphs and things in there. But I believe we have apples and oranges. You know, for example, on one of the graphs on page 24, we're dealing with offense level of at least 30. Well, Ms. Freeman had a 36, much higher than that. No weapon enhancement. And then a certain drug weight. Let me ask a question before you leave. Maybe it's just off the record or whatever. I just am curious. It appears though she must have had, they say four children and maybe I guess two of them were born before she had that fall and then they got their legal prescription on it. And beyond that, there is just a nagging question maybe to me as a court judge is, how in the world is this lady able to write all these prescriptions over a course of quite a long time on what clearly has become an addiction after the first legal one is given, she's complete and she gets in the court process. Is it, is the system so loose that someone can write prescriptions on this level over and over again? And I'm just wondering in terms of we don't let alcohol people who sell liquor to minors or whomever, you know, over and over do it. I guess they can, the alcoholics. I'm just curious, how was she able to do this? Well, Your Honor, the evidence in the record shows that she worked at a physician's office. She was able to get prescription paper there as well as from unnamed individuals. According to her interview, she was able to get physician DEA numbers. It just seems that to me, there are a lot of other defendants ought to be in this matter. Anybody who lets prescription pads lay around so that even the workers can take them. And then at the same time, you know, this person at some point, somebody has to know this lady is addicted to drugs and continue. I don't know if she gets it on the internet or whatever. It just seems to me there's a lot of other prosecutions here of people who dispense the drugs because she's not, I mean, she's getting them from a legal facility. And apparently they have no duty whatsoever, at least what I'm getting here. Maybe they have some other prosecutions, but this is a bad case. Your Honor, to respond to your question, I agree, I've prosecuted a physician before in this area for prescribing practices and achieved a conviction. I think also some of the problem why she was able to do this is the state system failed her. Rather than a significant sentence to deter her from future criminal conduct, she received slaps on the wrist  that did not deter her. And here we are in federal court with a significant drug- To the bridge program when it was not so severe might have worked. Now, perhaps some judges would have put her in the bridge program just as on substantive reasonableness. I would not be shocked if we might have 10 different sentences for Ms. Freeman from this distinguished panel. There's a continuum of reasonableness. It could have been a little higher, could have been a little lower. Counsel left the judge with no spectrum at all, but just everything in the PSR to accept it. That's all the judge basically did. And as to the other, he said the 3553 factors and the guidelines, you've already moved all the objections. That was all that was left because of what he did. He gave up every objection, every one, and didn't even understand the impact of it. So the judge was left with just that. And the judge never explained why he didn't put her in the program. He just didn't. And because he looked at the 3553 factors because he didn't have to do it. They listened. They were not opposed. As a matter of fact, didn't she have five children? Yes, sir. I believe that's correct. And the PSR says she had four. That might be an error in there. I didn't catch it. You did. But neither did her defense attorney. Right. He didn't do anything to put those things in the PSR. No counterweight at all. This lady was bereft of counsel, basically. Your Honor, he came up with a counterweight of a level 32 after close scrutiny of the prescriptions produced in discovery. But there is a clear inference that he made a strategic decision, which this court should give wide leeway to counsel to withdraw those. So in his words and Ms. Freeman's words, to avoid the hostile environment that this bad testimony would bring. And that's why he attempted to bring them back up. The same objection. He tried to resurrect them. So we know it was no strategy. You can't just run out to the facts. Respectfully, he was in a position after losing that motion to play Monday morning quarterback. So what did he have to lose by bringing them up at that time? Oh, my goodness. You got an answer for everything. But the truth is, if you look at it, he didn't understand exactly the impact of this waiver. It seemed like he thought, well, it's still in there. It's before them. I mean, if you read it carefully, it was left unwell. Anybody else have any questions? Thank you very much, Mr. Biker. Thank you, Chief Judge Gregory. Thank you, Chief Judge Gregory. If I may, I'd quickly like to circle back to Judge Rushing's question and consider it in the context of Judge Jacobson's question in my original argument. Judge Rushing had asked about the acceptance of responsibility and the impact of the new charges. And this is important, and it goes back to my point about why this is a rare case that needs to be now decided on direct appeal instead of waiting for the collateral attack in an evidentiary hearing. As counsel for the government stated, as Jockins explained, the court can withdraw her acceptance of responsibility based on the fact that she has these North Carolina charges. It's referenced in the PSR and the government stated that that's the basis for her acceptance of responsibility and potentially to have an enhancement for obstruction of justice. Under 5G1, 5G3.1B, she's allowed to run that North Carolina charge concurrent with her federal charge. And she's also allowed to have credit for the North Carolina time that she served, which has been about three years since this case was, since judgment was rendered, as long as there is an undischarged amount of time left on that North Carolina sentence. If this court rules on direct appeal, there will be an undischarged amount of time left such that she can run the sentences concurrently. However, at this point, and it's just an unintended consequence of the passage of time, it's very unique in this case. If we wait till collateral attack, the North Carolina sentence will expire and she will therefore serve an additional four years of the North Carolina time on top of her federal time because we waited for collateral to address this on collateral attack when we could address it on direct appeal. And so that's an important aspect in this case that makes it very unique and helps balance the equity between the harm to the counsel's reputation and this person's constitutional right to effective assistance of counsel. That's an additional four years that she's away from her children if we wait to address this on collateral attack. And we don't need to wait. This case is right for consideration. The record conclusively reveals that the court had no strategy. But just to clarify, were you agreeing with the government that the additional charges and the smuggling would have prevented her from receiving an acceptance of responsibility reduction? I'm not agreeing that... I believe her counsel should argue it on re-sentencing. It's very important and it's not a clear question in this circuit as to whether or not she was losing her responsibility or obtained an obstruction of justice enhancement. I disagree with Mr. Watkins' statement that every district court judge in South Carolina would give her the obstruction enhancement. However, under the current pre-sentence report and the guidelines as adopted by the district judge, she has lost the acceptance of responsibility and has an obstruction enhancement. And if that stays, by the time she goes back on collateral review, her North Carolina sentence will have expired and she will lose the ability to have credit for the North Carolina sentence unless we address it today on direct appeal  So I'm not agreeing, noted Judge Rushing, with the statement that she should lose the acceptance of responsibility. So you think that a judge, that you can show prejudice on that from, that a judge likely would have accepted that, accepted the responsibility reduction and not given the obstruction enhancement knowing the facts? I think there's a reasonable probability that the district judge, had this been argued by competent counsel, could have found that the acceptance, loss of the acceptance of responsibility point was improper and that she should not have lost those points. The guidelines, the comment to the guidelines, actually contemplates this and says that in exceptional circumstances, and as Judge Gregory and Judge Wynn have noted, this is one of those exceptional circumstances. In exceptional circumstances, the loss of acceptance of responsibility shouldn't apply. And here it's exceptional because the reasons the report has already discussed, she didn't just flee, she didn't run the next note, she didn't hide out. She told- Let me ask you something. Do we have any cases where we have found prejudice in circumstances where the prejudice depends on the discretion of a district judge? In other words, we would have to assume the district court exercises a discretion one way or the other, but has the discretion to go either way. Have we concluded that we can base prejudice on that circumstance? I'm sorry. I lost the feed for a second. The question is, do we have any cases where we can- where prejudice can be shown in a circumstance where we have to- on the exercise of discretion by the district court? The third event case from earlier this year involved a similar situation where- and this court found ineffective assistance of counsel where counsel withdrew a meritorious objection. So to the extent what you're asking is whether the court's determination on an objection, if you consider that to be discretionary, then yes, we do. From 2000- from this year, the court issued an opinion in the third event case. But again, it's not discretionary, which is he withdrew these objections. The court didn't even get to rule on them. There was no- No, the court was fully aware of them. You know, it's easy to trash this lawyer because he made so many mistakes. But on the positive side, he made a very effective appeal to the circumstances of his client. He spent pages talking about her conditions along the lines that Judge Wynn had suggested. And the judge expressed a full awareness of the objections and said he was prepared to hear them. And so he knew what was being faced there. And then the judge went on for a pretty good paragraph saying why he had thought this 210 months was the right sentence, despite those calculations, because it focused on the 355-3A factors and said, this is what I think in the circumstances of this case should be the right sentence. So now we have all these- the judge's awareness, and there's a lot of discretion being exercised there. The judge did go to the bottom of the guidelines range, but as others pointed out, that sentence is also within the guideline range of a 32 level. But my main question is a legal question as to whether we can find prejudice in a circumstance that depends on the district court's exercise of discretion. Your Honor, I'm not sure that, again, these are rare cases. I'm not sure that I'm aware of a Fourth Circuit case that is directly on point to your question. However, the Supreme Court case law in this circuit's case law has said that where a counsel's ineffectiveness exposes the client to a higher guideline range and a longer sentence, that is evidence of prejudice. And in this situation, his error- I know, but that's totally different. That's not hard. What's hard, I think, is when it depends on the exercise on your prejudice depends on the exercise of discretion by district court. And the district court has expressed the reasons for why it did exercise its discretion in this case, which is irrelevant to the objections made. The court was basically impressed by how many- business was going on. And of course, while she had an addiction, and it's a sad case for her, she passed it on to other people trying to get them so addicted so as to create business. And she pointed out how her business was yielding $1,000 a week profit. And so she was beyond just feeding her addiction. She was running a business. And the business is what troubled the district court a lot. The extensive period of time that this was going on as a business. Sure, she was addicted and she was supporting it, but we have a lot of drug dealers that are addicted and supporting their own habits. But the problem in this case is that her own conduct is also now creating addictions for other people on a very large scale. And I think the district judge expressed that quite well. And so it's not, I don't think we can just dismiss it that the court would have automatically given her a big break had he argued these objections. And Judge Neumar, I think my only response was to refer you back to Judge Harris's question. It doesn't really make sense why in this situation the district court made that comment about I would have sent it the same way or exercised my discretion because there were no- He explained why. He spent a whole paragraph explaining why. It wasn't just a rote thing. He went right to the 3553 factors and said, I'm familiar with this case and it's based on the facts of this case. And he explained what they were. So we're not lacking the reasons why he did it. The question I'm asking is, had the three objections been argued, you have number one, what if he sustained them and two of them at least require discretion. The other one requires some fact-finding. And number two, would it have changed the judge's mind? The judge said he would impose a variance sentence, he said, because I think 210 is the right number. That's what the judge said. So these are fairly difficult. I think in carrying a burden of prejudice when it relies on the discretion of the district judge who's revealed his views about how the discretion is going to be exercised. I know that's more of a statement than a question, but if Judge Gregory's agreeable, I'm happy to have you respond to that. Absolutely. You may respond. Can I interject, Judge Gregory, can I interject with two? Yes. As I recall under Strickland, to establish prejudice, there has to be a reasonable probability that but for counsel's unprofessional errors, the results of the proceeding would have been different. The reasonable probability is the probability sufficient to undermine confidence in the outcome. Well, that's what the Supreme Court said in Strickland as to the prejudice problem. I don't think that's consistent with what Judge Niemeyer talked about. No. That's not a question. I interject that. Thank you, Judge King. Ms. Metcalf, do you want to respond to Judge Niemeyer further? No, I'll just say that I agree with Judge King. I think Judge Niemeyer's questions with regard to discretion are articulating a different standard that goes beyond what the Supreme Court- No, no. It's a misunderstanding. I think it's important for me to make my question clear. It's not the probability- Now, Judge King obviously stated it very correctly, and I agree with that. The question is, how do you carry a burden of that probability when it depends on the discretion of a judge, and the judge has already indicated how he's going to exercise that discretion? In this case, and this is why it's the rare case, you carry the burden because you establish that but for his withdrawal of meritorious objections and decisions to put all his eggs in a basket with no bottom for the bridge court, the starting point for the offense level that the judge based his 3553A factor decision off of, and his discretion would have been different. Before you even get to the discretionary portion of the district court- Well, it would have been different only if the judge agreed. In other words, on the drug weight, I think that the file, the record, I would predict that the judge would have stuck by that weight, but the most that your client would have gotten would have been from a 34 to 32, at least based on the calculations of your former counsel, but on the other- Counselor, may I raise just a brief- On the other two, there's no suggestion that judge would have given discretion to grant them. Counselor, may I raise a question? One thing that concerns me is not so much this case, but where we're going. If we agree with you, aren't we pushing lawyers to be objecting here and there and everything? You've got an in-back decision that's saying we say you should object, no matter what your reasons might be. We'll give you an aye and say, are we pushing lawyers to be objecting and sentencing hearings at the drop of a hat? Even when the attorney is as well-mighted as possible here, feels that it is profoundly not in a client's best interest to be objecting here and to be objecting there and the rest. And I don't know if he might be applying just the sentencing, but he might be applying the trial as well, because it's the job of a lawyer to assign priority, to assign priority to the claims that are made and to assign priority to the objections that are raised. And if we push lawyers at sentencing and perhaps at trial to say, look, if you let any kind of even arguably meritorious objection go, you're going to be hit with IAC claims. And it takes away from the lawyer and has them raising objection after objection after objection. And I don't know that you can get away from the influence that you're providing to an over-objecting lawyer and taking it away from the attorney's good judgment by saying, this is one of those rare cases. This is one of those rare cases. I can tell you that the bar is going to read it as saying, we've got to object to every little thing. And that is not the direction you want lawyers in this circuit to go. You want them to exercise good judgment about which claims are important, which objections are important. And this goes contrary to all that and in some ways to the very nature of legal representation. And you have to, when you get in these in-bank settings, have to look at the long-range signal that you're sending. And it's very hard, it seems to me, given what would be done to sort of cabin this off as simply a rare case. If I may quickly address that, the nice thing is this court is not being asked to set something new. That standard was already set by this court in the Carthorne case in 2017. In that decision, the Fourth Circuit said, stated the standard with regard to meritorious objections. So counsel who practice in criminal matters in the Fourth Circuit since 2017 have already been on notice. That was before Ms. Freeman's case, actually, that they needed to bring meritorious objections and failure to do so might render, might subject them to an ineffective assistance with counsel claims. Of course, it's balanced by the Supreme Court and the Fourth Circuit guidance with regard to informed legal choices. In the Fourth Circuit since 1987 in the Hyman case, with regard to informed legal choices, lack of preparation and research cannot be considered the result of deliberate informed trial strategy. And in this case, that's what we have. There wasn't that preparation and research and informed trial strategy. And that's why this case is different. But since 2017, in the Fourth Circuit's Carthorne case, we've, this court's already said... And the response is without a hearing, how do we know? In most cases, Your Honor, we wouldn't know. But in this case, we don't need the hearing, just like in the Fisher case, because the lawyer stated on the record repeatedly that he didn't understand the guidelines, he didn't understand the impact, and that he thought his client was eligible for the Bridgeport program, which he most certainly was not eligible for. So that makes it a rare case. Thank you, counsel. Just call it off the record. And I'll be real, this is the last one little thing. Doesn't it also, counsel, put the district court in a difficult position? You know, if a lawyer withdraws an objection, I think you would agree that even a meritorious objection can be withdrawn based on strategic reasons. Yeah, I realize we're talking about the counsel's job and not the district court, but it seems to me you're also putting the district court in a difficult position, almost as if he or she has to do some sort of evaluation of how strong the objections are. I really do think this has, you know, broad implications about the practicalities of what lawyers do every day in making decisions and what district courts do when they make those decisions. And to do that without ever hearing from the lawyer, I mean, he may crash and burn when we hear from him. I mean, I'm not saying he won't, but that just seems like such a big step that I think we're doing, yeah, we're going to create more, we're going to create a real conundrum in the practicalities of on-the-ground work. Well, go ahead, counsel. I was about to say something. Go ahead. Go ahead, Judge Gregory. I'm not going to say it. Go ahead, because I shouldn't respond. But go ahead. You respond. Go ahead. Judge Quattlebaum, I'll just say I believe the district courts are up to that challenge as demonstrated by the district court record in this case. I mean, I can feel the district judge leaning in and he says, listen to my question. The district judge in this case recognizes that there's something here that isn't right, something smells rotten in the state of Denmark when he's withdrawing these meritorious objections. And he, the district judge here, I think, ably tries to address this issue. He asks repeatedly, are you sure you want to withdraw these objections? He then asks Ms. Freeman, when Ms. Freeman says, I'm not sure, and then asks the district judge a question, he has her step aside. So yes, there is a burden on the district court, but I think the district judges are very able to address that and the district judge in this case demonstrated how it can be done. Thank you, Ms. Metcalf. Thank you both counsel. I know Ms. Metcalf, that you are a court opponent. I just want to note on behalf of the Fourth Circuit how much we appreciate your doing that in very important cases. We appreciate it. And Mr. Watkins, I note your able representation in that state. We can't come down and reach you as we'd like to, but I know very much that you appreciate your being here and wish you safety and wellness. Take care. And with that, I'm going to ask the clerk to recess the court. This honorable court stands adjourned until tomorrow morning. Godspeed, United States and this honorable court.
judges: Gregory, Wilkinson, Niemeyer, Motz, King, Agee, Wynn, Diaz, Floyd, Thacker, Harris, Quattlebaum, Rushing